# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LM GENERAL INSURANCE CO.**, | **CIVIL ACTION** |
| Plaintiff-Counterclaim Defendant, | |
| *v.* | **NO. 19-2144-KSM** |
| **SHARON LEBRUN and ED LEBRUN,** | |
| Defendants-Counterclaim Plaintiffs. | |

## MEMORANDUM

**Marston, J.**                                                                                    **July 1, 2020**

Defendants-Counterclaim Plaintiffs Sharon and Ed LeBrun assert claims, on behalf of themselves and a class of similarly situated persons, for declaratory judgment and breach of contract against their insurer, Plaintiff-Counterclaim Defendant LM General Insurance Company. (Doc. No. 5.) The LeBruns seek a declaratory judgment (1) that their claims for recovery of underinsured motorist ("UIM") benefits are not barred by the household exclusion provision contained in their insurance policy and (2) that they are entitled to stacked UIM coverage. (*Id.* at ¶ 5.) In addition, the LeBruns seek to recover the stacked UIM benefits allegedly due to them under their policy. (*Id.* at ¶¶ 6, 180–202.) LM General moves to dismiss the LeBruns' counterclaims, arguing that the household exclusion bars the LeBruns from receiving UIM benefits and that the LeBruns are not entitled to stacked coverage because Mrs. LeBrun signed the statutorily mandated waiver form. (Doc. Nos. 12-2, 20.) For the reasons that follow, the Court grants the Motion in part and denies the Motion in part.

## I.       *Factual Background*

On August 26, 2016, Ed LeBrun was struck by a motorist while riding his motorcycle in

Sandy Township, Pennsylvania. (Doc. No. 5 at ¶¶ 13–15.) Mr. LeBrun suffered serious injuries, and his left leg was amputated below the knee. (*Id.* at ¶ 16.)

At the time of the accident, the LeBruns had two insurance policies—a motorcycle policy issued by State Farm Mutual Automobile Insurance Company, and a personal auto policy issued by LM General. (*Id.* at ¶¶ 20–23, 29.) The LM General personal auto policy did not cover Mr. LeBrun's motorcycle. (*See, e.g.*, *id.* at ¶¶ 51, 53).

After the accident, the LeBruns pursued several avenues in their attempts to recover sufficient compensation for Mr. LeBrun's injuries. (*See generally* Doc. No. 5.) First, the LeBruns sought and obtained the full liability limit of $100,000 available under the tortfeasor's personal auto policy. (*Id.* at ¶¶ 18, 25.) Additionally, the LeBruns filed a claim for UIM benefits[1] under their State Farm motorcycle policy, and State Farm tendered the full limit available under the policy, $50,000. (*Id.* at ¶¶ 28–29.) Finally, the LeBruns made a claim for UIM benefits under the LM General personal auto policy. (*Id.* at ¶ 31.) LM General denied the claim, finding that the policy's household exclusion provision prevented the LeBruns from recovering. (*Id.* at ¶¶ 32–34, 36; *see also* Doc. Nos. 5-2, 5-4.) The household exclusion states:

> We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:
> (1) By an "insured," as defined in this endorsement, while using, "occupying," or
> when struck by, any motor vehicle owned by you or a "family member," which
> is not insured for Uninsured Motorist Coverage under this policy.

(Doc. No. 2-1 at p. 18 ("Uninsured Motorists Coverage – Pennsylvania (Non-Stacked)"); *see also* Doc. No. 5 at ¶ 70; *accord* Doc. No. 2-1 at p. 11 (Part C – Uninsured Motorists Coverage, Exclusions, Part A).) Because Mr. LeBrun suffered bodily injury while occupying his

---

[1] "UIM coverage is triggered when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019).

motorcycle—which he owned but was not insured under the LM General personal auto policy—LM General concluded that the household vehicle exclusion barred the LeBruns from receiving UIM benefits under that policy. (*See* Doc. Nos. 5-2, 5-4.)

LM General also concluded that the LeBruns were not entitled to stacked[2] UIM coverage. (Doc. No. 5-2 at pp. 4–5.) At its inception on April 23, 2012, the personal auto policy covered three vehicles. (Doc. No. 5 at ¶ 51.) Two days prior, on April 21, 2012, Mrs. LeBrun signed a Rejection of Stacked Underinsured Coverage Limits form, which reads:

> By signing this waiver, I am rejecting stacked limits of Underinsured Motorists Coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy, I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(*See* Doc. No. 5 at ¶ 45; Doc. No. 5-2 at p. 9; Doc. No. 2-2.) Further, both the LeBruns signed a form that stated:

> I am . . . aware that my selections apply throughout the policy period regardless of any change such as the replacement or addition of vehicles or drivers, and my selection also applies to all future renewals or reinstatements of this policy unless I indicate otherwise to Liberty Mutual in writing.

(Doc. No. 5-2 at p. 7.)

A few years later, the LeBruns purchased a fourth vehicle, a 2015 GMC Sierra. (Doc.

---

[2] "'Stacking' refers to the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured." *Gallagher*, 201 A.3d at 132 n.1. "To give a stylized example of how stacking works, imagine an insured with two insurance policies. The first covered her family's two automobiles and provided $10,000 in underinsured motorist coverage per vehicle. The second covered the insured's motorcycle and provided $5,000 in underinsured motorist coverage for her bike. If the insured elected to 'stack' her coverage, then she could recover a total of $25,000 in underinsured motorist coverage for an accident involving any of the vehicles—$ 20,000 in coverage from the first policy (intra-policy stacking) plus the $5,000 from the second (inter-policy stacking)." *Stockdale v. Allstate Fire & Cas. Co.*, Civil Action No. 19-845, 2020 WL 953284, at *1 n.4 (E.D. Pa. Feb. 27, 2020) ("*Stockdale II*").

No. 5 at ¶ 51; Doc. No. 5-2 at pp. 2–3.)  The LeBruns allege that "at or before purchasing the fourth vehicle," they contacted their insurance agent and requested that the fourth vehicle be added to their policy.  (Doc. No. 5 at ¶ 53.)  The very next day, when the fourth vehicle was added to the policy, LM General generated an Amended Declarations Page.  (*Id.* at ¶¶ 54–55.) LM General did not require the LeBruns to sign a new stacking waiver.  (*Id.* at ¶ 141.)

Section J of the personal auto policy provides, in relevant part:

"Your covered auto" means.

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto, or

   b. a pickup or van that:

      (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

      (2)  is not used for the delivery or transportation of goods and materials unless such use is:

         (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

         (b) for farming or ranching.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner, and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.  You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the

Declarations.

(*See* Doc. No. 2-1 at p. 7.)

## II.    *Legal Standard*

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks and alterations omitted). Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    *Discussion*

In moving to dismiss, LM General makes numerous contentions, including that the LeBruns cannot recover stacked UIM benefits because Mrs. LeBrun signed a waiver form, pursuant to which the LeBruns waived both inter-policy and intra-policy stacking; the household exclusion in the policy bars the LeBruns from recovering; the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indemnity Co.* does not apply because the LeBruns waived inter-policy stacking; *Gallagher* should not be applied retroactively; the LeBruns are estopped from arguing that they did not waive stacked benefits; the LeBruns waived stacked benefits by paying

lower premiums associated with non-stacked benefits; the LeBruns' declaratory judgment claims are duplicative of their breach of contract claim; the statute of limitations bars class members' claims who were denied UIM coverage before June 17, 2015; and the claims of putative class members who pursued uninsured ("UM")[3] claims, as opposed to UIM claims, should be dismissed because the LeBruns do not have standing. (*See* Doc. Nos. 12-2, 20.) We address each in turn.

A.    **The addition of the LeBruns' fourth vehicle to the policy and whether LM General was required to obtain another stacking waiver**

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") provides a default of stacked coverage. *See* 75 Pa.C.S. § 1738(a) ("When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured."). However, the insured may waive the default of stacked coverage. *See* 75 Pa.C.S. § 1738(b) ("Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured."). Under 78 Pa.C.S. § 1738(c), an insurer is required to give the insured notice of the opportunity to waive:

> Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

Further, 78 Pa.C.S. § 1738(d) provides the language to be used in the standard stacking waiver form.

---

[3] "UM coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured." *Gallagher*, 201 A.3d at 132 n.1.

In a line of cases known as the *Sackett* trilogy, the Pennsylvania Supreme Court and Pennsylvania Superior Court delineated when insurers must provide stacking waivers to insureds. In *Sackett v. Nationwide Mutual Insurance Co.*, 919 A.2d 194 (Pa. 2007) ("*Sackett I*"), the Pennsylvania Supreme Court held that each time an insured adds a new vehicle to an existing policy, the insurer must secure a new stacking waiver. *Id.* at 196–96, 202. This is so even if the insured had previously signed a stacking waiver form, because each time a new vehicle is added to the policy, the amount of coverage that may be stacked increases. *Id.* at 202. After *Sackett I*, the court granted the insurer's request for reconsideration, and in *Sackett v. Nationwide Mutual Insurance Co.*, 940 A.2d 329 (Pa. 2007) ("*Sackett II*"), the Pennsylvania Supreme Court clarified its holding. The court noted that the Insurance Commissioner "explain[ed] that the mechanism by which vehicles generally are added to existing policies is via 'newly acquired vehicle clauses.'" *Id.* at 331. The court held that when a vehicle is added via a continuous after-acquired clause,[4] the insurer is not obligated to get a new waiver. *Id.* at 334 ("To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, again, we clarify that *Sackett I* should not disturb the effect of an initial UM/UIM stacking waiver obtained in connection with a multi-vehicle policy."). In contrast, the court concluded that when a vehicle is added to an existing policy under a finite after-acquired vehicle clause*, Sacket I* controls and an insurer must secure a new waiver. *Id.* In *Sackett v. Nationwide Mutual Insurance Co.*, 4 A.3d 637 (Pa. Super. Ct. 2010) ("*Sackett III*"), the Pennsylvania Superior Court concluded that the plaintiffs' additional vehicle was added via an endorsement, rendering the after-acquired clause inapplicable. *Id.* at 640. The court held that the insurer was

---

[4] "Newly acquired vehicle clause" and "after-acquired vehicle clause" are used interchangeably.

required to obtain a new waiver under *Sackett I*, and because it did not, the plaintiffs were entitled to stacked UIM coverage. *Id.* at 640–41.

Following the *Sackett* trilogy, a divide amongst the case law appears to have emerged, and courts vary in their determinations of whether vehicles are added to policies via an endorsement, a continuous after-acquired vehicle clause, or a finite after-acquired vehicle clause and thus whether insurers are required to obtain new stacking waivers. In one line of cases—the *Bumbarger* line of cases—the Pennsylvania Superior Court found that the vehicles were added by endorsement, and the insurers were required to obtain new waiver forms. *See Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872, 873–74, 878–79 (Pa. Super. Ct. 2014) (en banc) (holding that a fourth vehicle was added via endorsement and the insurer needed to obtain a new waiver, where the plaintiff informed her insurance agent that she wanted the vehicle added to the policy and the addition was reflected in an amended declarations page); *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481, 490 (Pa. Super. Ct. 2017) (concluding that the additional vehicle was added via an endorsement and the insurer had to secure a new waiver, where the plaintiffs requested proof of coverage for a vehicle prior to purchase and the agent faxed the plaintiffs an amended declarations page reflecting coverage of that vehicle); *Newhook v. Erie Ins. Exchange*, No. 1917 EDA 2017, 2018 WL 1939814, at *4 (Pa. Super. Ct. Apr. 25, 2018) (holding that the insurer should have secured a new waiver, where the insurance company issued an amended declarations page, reflecting the addition of two new vehicles); *Kline v. Travelers Personal Sec. Ins. Co.*, 223 A.3d 677, 688 (Pa. Super. Ct. 2019) (affirming the trial court's finding that two new vehicles were added to the policy via endorsements and that the insurer was required to obtain a new waiver). But a separate line of cases developed out of this court's opinion in *Seiple v. Progressive North Insurance Company*, which was affirmed by the Third Circuit. 954 F. Supp.

2d 352 (E.D. Pa. 2013), *aff'd*, 568 F. App'x 183 (3d Cir. 2014). The *Seiple* court found that the vehicles were added via continuous after-acquired clauses such that the insurers were not required to obtain new waiver forms, and noted that "*Sackett III* does not create a *per se* rule . . . that vehicles added by endorsement require new stacking waivers without regard to the language in the after-acquired clause." *See id.* at 353, 360 (holding that the plaintiffs' three motorcycles were added via a continuous after-acquired vehicle provision and the insurer did not need to obtain a new waiver, where, each time the plaintiff purchased a new motorcycle, the insurer issued a revised declarations page, listing the motorcycles covered under the policy); *Powell v. Allstate Prop. & Cas. Ins. Co.*, Civil Action No. 13-5721, 2014 WL 3573139, at *8–9 (E.D. Pa. July 21, 2014) (concluding that the plaintiff's vehicle was added to the policy via a continuous after-acquired clause and rejecting the plaintiff's argument that the amended declarations page, which reflected the addition of the vehicle, was an endorsement); *Mitchell v. Progressive Preferred Ins. Co.*, Civil Action No. 3:14-0384, 2015 WL 5762927, at *3 (M.D. Pa. Sept. 29, 2015) (holding that the vehicle was added to the policy via a continuous after-acquired vehicle clause and no new waiver form was required); *Kuhns v. Travelers Home & Marine Ins. Co.*, 760 F. App'x 129, 132–33 (3d Cir. 2019) (affirming the magistrate court's conclusion that "neither the adding of the fourth vehicle to the declarations sheet, nor the issuance of that sheet, triggered [the insurer's] contractual duty to extend coverage to the [insured's] newly-acquired vehicle. Instead, its duty was triggered by the policy's after-acquired vehicle clause," and holding that the insurer was not required to secure a new waiver form).

Here, relying on the *Seiple* line of cases, LM General contends that the LeBruns' fourth vehicle was added to the personal auto policy via a continuous after-acquired vehicle clause and therefore the waiver Mrs. LeBrun signed at the policy's inception governed and no new waiver

was required.  (Doc. No. 12-2 at pp. 13–15.)  LM General has held this position all along—in a letter denying coverage, LM General cited the after-acquired vehicle clause, noting that

> under [the after-acquired vehicle clause's] language, coverage, including non-stacked [UIM] Coverage, is extended to any after-acquired vehicle, including the 2015 GMC Sierra, so long as Mr. and Mrs. LeBrun asked LM General Insurance Company to insure that vehicle within 30 days of becoming the owner of the vehicle.  Mr. and Mrs. LeBrun requested LM General Insurance to insure the 2015 GMC Sierra within 30 days of purchase of that vehicle and, therefore, no new stacked UIM waiver form was required.

(Doc. No. 5-2 at p. 5.)  To further buttress its argument that it was not required to secure a new waiver form, LM General also notes that when the policy was originally issued, the LeBruns signed a form agreeing that their "selections apply throughout the policy period regardless of any change such as the replacement or addition of vehicles or drivers, and [their] selection also applies to all future renewals or reinstatements of this policy unless [they] indicate otherwise to Liberty Mutual in writing."  (*Id.* at p. 14.)[5]

In contrast, relying on the *Bumbarger* line of cases, the LeBruns argue that because LM General issued an amended declarations page, their fourth vehicle was added to the policy via endorsement and that at the time the fourth vehicle was added, LM General was required to provide them with a new opportunity to waive stacked UIM benefits.  (Doc. No. 15-1 at pp. 44–46.)  To support their position that the fourth vehicle was added via an endorsement, the LeBruns cite to language in LM General's letter:

> On July 15, 2016, Mr. and Mrs. LeBrun purchased a fourth vehicle, a 2015 GMC Sierra, and called Liberty Mutual to add this vehicle to their policy.  A Policy

---

[5] The Court is mindful that contracts "cannot alter existing laws." *Gallagher*, 201 A.3d at 137 ("Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws.").  The Court finds that it is too early at this stage of the litigation to determine whether this specific provision is enforceable, and neither party presented arguments on this issue.  To the extent the provision is enforceable, we observe that this additional contractual language distinguishes the LeBruns' case from *any* of the cases the parties have cited.

Declarations summary dated July 16, 2016 was issued to document Mr. and Mrs. LeBrun's telephonic request that the 2015 Sierra be added to their policy.

(Doc. No. 5-2 at p. 3.)

We agree that the manner in which the LeBruns' fourth vehicle, the 2015 GMC Sierra, was added to their existing policy is crucial to the determination of the need for a new stacking waiver. As the Pennsylvania Superior Court's *en banc* decision in *Bumbarger* states, a court's focus must be "(1) how the new vehicle was added to the existing policy (i.e., via endorsement or newly acquired auto clause); and (2) what is the specific language of the relevant clauses found in the applicable insurance policy." 93 A.3d at 876–77. The first step in this analysis requires a factual determination. With the sole exception of *Seiple*, every case LM General cited—and that this Court has found—resolves the issue of whether the insurer was required to obtain a new stacking waiver at the summary judgment stage, not on a motion to dismiss. Accordingly, we decline to decide the issue at this early stage in the litigation. The parties may raise the issue again later, at summary judgment, with the benefit of discovery.

## B. Inter-policy versus intra-policy stacking

LM General asserts that the statutory waiver form Mrs. LeBrun signed waived both inter-policy and intra-policy stacking.[6] (Doc. No. 12-2 at pp. 16–21.) In response, the LeBruns argue that the original waiver form Mrs. LeBrun signed only waived intra-policy stacking, and *not* inter-policy stacking. (Doc. No. 15-1 at pp. 16–22.)

As a court in this District has observed, "[t]here is little direct authority on the intricacies

---

[6] *Inter*-policy stacking refers to "the stacking of limits available on two or more separate policies," such as the LM General personal auto policy and the State Farm motorcycle policy in this case. *Craley v. State Farm Fire & Casualty Co.*, 895 A.3d 530, 533 (Pa. 2005). *Intra*-policy stacking "entail[s] the stacking of limits applicable to more than one vehicle insured under a single policy." *Id.* For example, intra-policy stacking refers to the stacking of the LeBruns' four different vehicles that are all insured under the LM General personal auto policy.

of inter-policy stacking under Pennsylvania law" but the "most instructive precedent" is the Pennsylvania Supreme Court's decision in *Craley v. State Farm Fire & Casualty Co.  Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545, 549 (E.D. Pa. 2019).  In *Craley*, Mrs. Craley was killed in an accident caused by an uninsured drunk driver, and her infant son and mother-in-law were also injured.  895 A.2d at 533.  At the time of the accident, Mrs. Craley had a policy with State Farm, and Mr. Craley had his own, separate State Farm policy.  *Id.*  The Craleys (Mr. Craley on behalf of Mrs. Craley's estate and their son, and the mother-in-law on behalf of herself) sought and obtained UM benefits under Mrs. Craley's State Farm policy.  *Id.* The Craleys then sought UM benefits under Mr. Craley's State Farm policy.  *Id.*  State Farm denied the claim, in part because Mr. Craley had signed a stacking waiver form.  *Id.*  The Pennsylvania Supreme Court considered whether Mr. Craley waived inter-policy stacking when he signed the waiver form.

First, the court noted that "Section 1738(a) [of the MVFRL] unambiguously provides for inter- as well as intra-policy stacking, thus expressing the clear intention of the General Assembly to compel insurers to provide stacking coverage absent a valid waiver."  *Id.* at 538. After examining the interplay among various Section 1738 provisions, the *Craley* court concluded that inter-policy stacking could be waived.  *Id.* at 539–40.

Next, the court determined how inter-policy stacking could be waived.  Mr. Craley had signed a stacking waiver form, which mirrored the statutory language provided by Section 1738(d) of the MVFRL (and is identical to the waiver signed by Mrs. LeBrun with respect to UIM coverage in this case):

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead, the limits of coverage that I am purchasing

> shall be reduced to the limits stated in the policy.  I knowingly and voluntarily
> reject the stacked limits of coverage.  I understand that my premiums will be
> reduced if I reject this coverage

*Id.* at 53334; *see also* 78 Pa.C.S. § 1738(d).  Section 1738(e) "imposes a significant sanction on

an insurance company that deviates from the form, voiding any 'rejection form that does not

comply with this section.'"  *Craley*, 895 A.2d at 540–41 (quoting 78 Pa.C.S. § 1738(e)).  The

court concluded that "[g]iven the form required by subsection (d), the sanction provided in

subsection (e), and the imperative language granting stacking to all insureds in subsection (a), it

is readily apparent that some form of knowing waiver must occur before we allow enforcement

of an inter-policy stacking waiver."  *Id.* at 541.

The insurer argued that Mr. Craley's signing of the waiver form, which included the

statutorily mandated language, constituted waiver of inter-policy stacking.  *Id.*  However, the

court determined that it needed to look further into whether the waiver was knowing:

> While the language of subsection (d) is unambiguous in regard to the sufficiency
> of waiver of intra-policy stacking as it speaks to stacking as 'the sum of the limits
> for each motor vehicle insured *under the policy*,' the language does not clearly
> address an inter-policy stacking waiver, which would involve the limits for each
> motor vehicle insured *under the policies*.  Therefore, we must determine whether,
> under the circumstances of this case, the form put [Mr. Craley] on clear notice
> that he was waiving inter-policy stacking.

*Id.* at 541 (citation omitted).  The court ultimately held that Mr. Craley had been put on clear

notice that he was waiving inter-policy stacking.  *Id.* at 542.  In its analysis, the court focused on

the fact that Mr. Craley's policy only covered one vehicle.  *Id.* at 541–42.  Accordingly, when

Mr. Craley signed the waiver form stating, "I understand that my premiums will be reduced if I

reject this coverage," he "could not have thought he was receiving a reduced premium for intra-

policy stacking because there could be no intra-policy stacking with only one vehicle on the

policy."  *Id.*  The court further stressed that "[a]bsent the applicability of intra-policy waiver, the

only interpretation fairly available to [Mr. Craley] was that his premium-reducing waiver applied

to inter-policy stacking. *Id.* In a footnote, the court foresaw the very situation this Court is presented with:

> Although we conclude that the waiver in this case was knowing*, our consideration nonetheless raises questions as to whether the waiver would be knowing if [Mr. Craley's] policy had covered more than one vehicle.* If a named insured insures some cars under one policy ("the policy") and others under a separate policy ("the second policy") and signs the form provided in subsection (d) which refers to the waiver of stacking "for each motor vehicle insured under *the policy,*" that named insured reasonably could assume that he received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by "the policy" with no knowledge that he was waiving stacking of the applicable limits of "the policy" to "the second policy," despite paying premiums on both policies. We urge the legislature or the Commissioner to clarify whether and how insurers may secure a valid waiver in such a case.

*Id.* at 542 n.18 (emphasis added).

In *Donovan v. State Farm Mutual Automobile Insurance Co.*, this court considered whether signing the waiver form sufficed to waive inter-policy stacking where the policy at issue covered multiple vehicles. 392 F. Supp. 3d at 546–47, 551. There, the plaintiff had a motorcycle policy with State Farm. *Id.* at 547. His mother had an automobile policy with State Farm, which covered three vehicles. *Id.* The mother signed a waiver form, declining stacked UIM benefits under her policy. *Id.* at 547–48. After a motorcycle accident, the plaintiff sought and received UIM benefits under his own motorcycle policy. *Id.* at 547. He then sought UIM benefits under his mother's policy. *Id.* State Farm denied the claim, and argued that the mother's waiver applied to both intra-policy stacking and inter-policy stacking. *Id.* at 547–48. The court rejected State Farm's argument and found the waiver *only* applied to intra-policy stacking:

> State Farm cannot rely upon [Ms. Donovan's] waiver of intra-policy stacking because her policy covered multiple vehicles. *Craley* instructs that in such cases a waiver that refers only to the 'policy' cannot be assumed to waive inter-policy stacking. *Craley* makes clear that the premium reduction [Ms. Donovan] acknowledged in waiving stacking correlates with a waiver of intra-policy stacking.

*Id.* at 551. The court further found that State Farm did not provide any other basis for it

to determine that Ms. Donovan knowingly waived inter-policy stacking.  *Id.*

In *Craley*, which has not been overruled, the Pennsylvania Supreme Court has made clear that waiver of inter-policy stacking must be "knowing," and conducted a fact-specific inquiry as to whether Mr. Craley's waiver was knowing in that case.  Given that *Craley* and *Donovan* were decided on summary judgment,[7] after full discovery, we decline to decide the issue on a motion to dismiss.  The parties may brief the issue again at summary judgment, with the benefit of discovery.

### C.    Enforceability of the household exclusion under *Gallagher*

In asserting their counterclaims, the LeBruns maintain that LM General improperly relied on the household exclusion provision when denying their claim for UIM benefits, arguing that the Pennsylvania Supreme Court's decision *Gallagher v. GEICO Indemnity Co.* swept broadly and rendered *all* household exclusion provisions void and unenforceable.  (*See, e.g.*, Doc. No. 5 at ¶¶ 37, 61, 75; *see also* Doc. No. 15-1 at pp. 46–47.)  Nonetheless, the LeBruns admit that for

---

[7] Neither the Pennsylvania Legislature nor the Commissioner has accepted the invitation to clarify this issue.  As such, we note as the court did in *Donovan*, that there is little guidance on this issue.  *See Donovan*, 392 F. Supp. at 550 ("*Craley* remains the controlling case, as no further decision sheds light on the issue before me, nor has the legislature acted in response to the Court's invitation.").  *Donovan* is currently under consideration before the Third Circuit.  It appears that, in holding that the plaintiff's mother did not waive inter-policy stacking when she signed the waiver form, the *Donovan* court relied on *Craley's* dicta.  *Compare Craley*, 895 A.3d at 542 n.18 *with Donovan*, 392 F. Supp. 3d at 551.  This Court understands the holding of *Craley* to be that the MVFRL "unambiguously provides for inter- as well as intra-policy stacking, thus expressing the clear intention of the General Assembly to compel insurers to provide stacking coverage absent a valid waiver," and that under the facts at issue—where the plaintiff had a single-vehicle policy and signed the waiver form—the plaintiff knowingly waived inter-policy stacking.  895 A.3d at 539, 542.

During oral argument, LM General's counsel observed that the *Craley* and *Donovan* courts focused on the fact that the statutory waiver language refers to "the policy," singular.  Counsel argued that "[t]he reason it refers to the policy singular is because the insured is only waiving stacking under the policy that they're purchasing . . . They are not waiving stacking under any other policy by virtue of this waiver."  (Oral Argument Tr. at 21:7–22.)  We find this reasoning persuasive.  We also observe that insurance companies are extremely limited in this context, by virtue of MVFRL Section 1738(d)-(e), which dictate the language to be used in the waiver form and impose sanctions for insurers who deviate from that language.

*Gallagher* to apply, this Court would need to find that the LeBruns did not waive inter-policy stacking.  (Doc. No. 15-1 at pp. 47–48.)  In moving to dismiss, LM General argues that the household exclusion in the policy at issue is valid and *Gallagher* is inapplicable here.  (*See* Doc. No. 12-2 at pp. 7–11; Doc. No. 20 at pp. 1–3.)

In *Gallagher*, the plaintiff had two GEICO insurance policies—one for his motorcycle (the motorcycle policy), and one for his cars (the automobile policy).  201 A.3d at 132–33.  The plaintiff opted for and paid for stacked UM and UIM coverage when purchasing both policies. *Id.* at 133.  While riding his motorcycle, the plaintiff was involved in an accident and injured.  *Id.* at 132–33.  The plaintiff recovered the full policy limits of UIM coverage available under the motorcycle policy.  *Id.* at 133.  However, when the plaintiff filed a claim for UIM coverage under the automobile policy, GEICO denied the claim.  *Id.*  GEICO concluded that because the plaintiff was injured while riding the motorcycle (which was not insured under the automobile policy), "the household exclusion[8] precluded [him] from receiving stacked UIM coverage pursuant to that policy."  *Id.*

The Pennsylvania Supreme Court held that the household exclusion, which was "buried in an amendment" to the automobile policy, violated the MVFRL because it impermissibly acted as a *de facto* waiver of stacked UM and UIM coverages.  *Id.* at 132, 138.  In its analysis, the court explained that absent the household exclusion, the plaintiff would have received the stacked UIM coverage that he bought and paid for.  *Id.* at 137–38; *see also id.* at 138 ("One of the insurance industries' age-old rubrics in this area of law is that the insured should receive the coverage for which he has paid.  Here, GEICO argues against this maxim by invoking the

---

[8] The household exclusion in the automobile policy read:  "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy."  *Id.* at 133.

household vehicle exclusion to deprive [the plaintiff] of the stacked UIM coverage that he purchased.").  Further, GEICO was aware of the potentiality of stacking between the automobile policy and the motorcycle policy and collected premiums for stacked coverage from the plaintiff. *Id.* at 138.  The court explained: "There simply is no reason that insurers cannot comply with the Legislature's explicit directive to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing Section 1738 waiver and still be fairly compensated for coverages offered and purchased."  *Id.* at 138.  Then, in a footnote, the court added:

> We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding.  For example, when multiple policies *or insurers* are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.

*Id.* at 138 n.6 (emphasis added).

Following the Pennsylvania Supreme Court's decision, courts have been inclined to interpret *Gallagher* broadly.  *See, e.g.*, *Stockdale II*, 2020 WL 953284, at *5 ("The Pennsylvania Supreme Court must be presumed to have meant what it said when it wrote that 'household vehicle exclusions should not and cannot operate as a pretext to avoid stacking' and that 'these exclusions are unenforceable as a matter of law,' and this Court declines to read any limiting language into that clear pronouncement."); *Donovan*, 392 F. Supp. 3d at 552 (holding that the insurer could not rely on the household exclusion to deny the plaintiff's claim for UIM benefits and noting that "[a]s a federal judge sitting in diversity, the sweeping nature of *Gallagher* makes me hesitant to begin the process of limiting its reach"); *Rutt v. Donegal Mut. Ins. Co.*, No. CI-19-02544, 2019 WL 4570159, at *2 (Pa. Ct. of Common Pleas 2019) ("Here, [the plaintiff] argues that *Gallagher* is distinguishable from this case, as the two policies at issue in *Gallagher* were both issued by the same insurance provider; whereas here [the plaintiff's] motorcycle was insured under the Agency Policy, and the cars were insured under the Donegal Policy.  However,

the court in *Gallagher* specified that all household vehicle exclusions are in violation of the MVFRL, rather than limiting its holding to cases wherein both policies were issued by the same insurance provider."); *accord Smith v. AAA Interins. Exchange of Auto. Club*, Civil Action No. 20-768, 2020 WL 2193357, at *3 (E.D. Pa. May 6, 2020) ("The Pennsylvania Supreme Court did not restrict its holding to the *Gallagher* fact pattern . . . The Pennsylvania Supreme Court clearly intended its holding to have broad, not limited application."). As another court in this District observed, although the Pennsylvania Supreme Court did "not explicitly state that the holding of *Gallagher* would be expanded to situations that involve more than one insurer, Justice Wecht's dissent [in *Gallagher*] certainly seems to accept that the scope of the majority opinion extends widely." *Smith v. Nationwide Mut. Ins. Co.*, 392 F. Supp. 3d 540, 543 (E.D. Pa. 2019). In his dissent, Justice Wecht wrote, "the Majority's '*de facto* waiver' rationale would apply even if GEICO had not known about Gallagher's motorcycle. In other words, the Majority interprets Section 1738 to mean that automobile insurers are required to cover unknown risks that were never factored into the calculation of insureds' premiums.'" *Gallagher*, 201 A.3d at 141 (Wecht, J., dissenting).

The cases LM General cites in its supplemental notices of authority (*see* Doc. Nos. 23, 33, 34) to support its contention that *Gallagher* should be interpreted narrowly are distinguishable. Nor do those cases support a finding, at this stage in the litigation, that *Gallagher* does not apply to the set of facts presently before us. *See, e.g.*, *Dunleavy v. Mid-century Ins. Co.*, Civil Action. No. 19-1304, 2020 WL 2536816, at *3 (W.D. Pa. May 19, 2020) (finding *Gallagher* inapplicable because "this case doesn't involve stacking," where the plaintiffs conceded that Mr. Dunleavy had validly waived UIM coverage under the Progressive policy, such that "there [was] no UIM coverage on which to stack the [at issue] Mid-century policy");

*Nationwide Affinity Ins. Co. of Am. v. Fong*, No. 19-2119, 2020 WL 2039720, at *3 n.3 (E.D. Pa. Apr. 28, 2020) (holding that the regular use exclusion excluded coverage of the insureds' claim and noting that even the insureds abandoned their argument that *Gallagher* was applicable during oral argument); *Barnhart v. The Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653, 658 (W.D. Pa. Oct. 28, 2019) (considering whether denial of benefits based on the regular use exclusion was enforceable and concluding that "*Gallagher*'s holding does not extend to the 'regular use exclusion'").

To the extent that the LeBruns did not waive inter-policy stacking, the case law discussed above indicates that *Gallagher* may apply, and at the motion to dismiss stage, we are not inclined to interpret *Gallagher*'s holding narrowly. With the benefit of discovery, the parties may brief the issue again on summary judgment. *See Smith*, 392 F. Supp. 3d at 545 ("*Gallagher* was the first time a majority of the Pennsylvania Supreme Court has opined on such issues, which this Court does not take lightly. Accordingly, the Court is unprepared to determine, at a motion to dismiss stage, that the household vehicle exception in the insurance policy at issue does not act as a *de facto* waiver of stacked UIM coverage. The parties may raise this issue again in summary judgment motions, should they choose to do so, with the benefit of discovery holding.").

D.      **Retroactivity of the *Gallagher* decision**

LM General argues that *Gallagher*, a 2019 decision, does not apply to the LeBruns' personal auto policy, which was issued in 2012, because it announced a new rule of law. (Doc. No. 12-2 at pp. 11–12.) As the LeBruns aptly observe (*see* Doc. No. 15-1 at p. 49), at least one court in this District previously rejected that same argument. *See Butta v. GEICO Cas. Co.*, 383 F. Supp. 3d 426, 436–41 (E.D. Pa. 2019) ("*Butta I*"). The *Butta I* court concluded that "[t]he Pennsylvania Supreme Court in *Gallagher* did not announce a new rule of Pennsylvania law

because it did not express a 'fundamental break from precedent' or modify a 'previous opinion' of the Pennsylvania Supreme Court." *Id.* at 436; *see also Kline*, 223 A.3d at 691 ("Instantly, the Pennsylvania Supreme Court in *Gallagher* did not announce a new rule of law.").  As a result, the *Butta II* court held "*Gallagher* applies to the MVFRL since its inception and applies to [the plaintiff's] policy," and denied the defendant's motion to dismiss.  *Id.* at 436, 442.

LM General cites *Stockdale v. Allstate Fire & Casualty. Insurance Co.*, 390 F. Supp. 3d 603, 613 (E.D. Pa. 2019) ("*Stockdale I*") for the proposition that "[t]he rule in *Gallagher* . . . represents a fundamental break with precedent on which insurers relied."  (Doc. No. 12-2 at pp. 11–12.)  Although the *Stockdale I* court found that *Gallagher* announced a new rule of law (illustrating a split within this District on this issue), *Stockdale I* actually cuts against LM General's argument that *Gallagher* should not apply here.  There, the court "predict[ed] that, *as is generally the case*, the Pennsylvania Supreme Court would apply *Gallagher both retroactively and prospectively*," and thus denied the insurer's motion to dismiss.  390 F. Supp. 3d at 613 (emphasis added).

For these reasons, we find that *Gallagher* would apply retroactively and deny LM General's motion to dismiss on such grounds.

## E.    Estoppel

LM General asserts that even if it had been required to obtain an additional stacking waiver or the waiver did not waive inter-policy stacking, the LeBruns are estopped from asserting that they did not waive inter- and intra-policy stacking.  (Doc. No. 12-2 at p. 21.)  LM General argues that Mrs. LeBrun induced it to believe that she wanted non-stacked coverage (by signing the waiver form and by receiving an amended declarations page that confirmed she still had non-stacked coverage).  (*Id.*)  But LM General does not cite a single factually analogous case to support this point.  LM General does not proffer any support for this theory from the complex

realm of insurance stacking law.  Rather, they cite to a Pennsylvania Supreme Court case espousing the general principles of estoppel.  Given the Pennsylvania Supreme Court's holdings in *Sackett I* and *Sackett II,* we find this insufficient to support dismissal at this stage of the litigation, regardless of the fact that the LeBruns did not respond to the estoppel argument in their response.

### F.    Waiver by paying premiums

LM General contends that the LeBruns waived inter-policy stacking by accepting a policy that limited inter-policy stacking and paying the associated lower premium.  (Doc. No. 12-2 at pp. 22–23.)  LM General does not cite a single case supporting this argument, nor do we find any support for it in the insurance stacking law discussed above.  At this stage, we find dismissal would be inappropriate on this ground, even though the LeBruns did not respond to this argument in their response.

### G.    Duplicative nature of claims for declaratory relief and breach of contract and whether the declaratory judgment claim solely adjudicates past conduct

LM General argues that the LeBruns' declaratory judgment claims are duplicative of their breach of contract claim and should be dismissed.  (Doc. No. 12-2 at pp. 23–24.)  "Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action."  *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019) ("*Butta II*").

As LM General correctly observes in its reply, a court in this District addressed the very issue raised here on a similar set of facts, at summary judgment.  (Doc. No. 20 at p. 9 (citing *Butta II*).).  In *Butta II*, the plaintiff sued his parents' insurance company after it denied his claim for UIM benefits due to the household exclusion.  400 F. Supp. 3d at 229.  The plaintiff asserted declaratory judgment and breach of contract claims.  *Id.* at 231–34.  In Count I of his complaint,

the plaintiff asked for a declaration that he was "entitled to receive stacked [UIM] coverage under the Personal Auto Policy issued by GEICO to [the plaintiff's parents] in connection with the issues sustained by [the plaintiff] in the July 20, 2017 motor vehicle accident." *Id.* at 231–32. In Count II, the plaintiff sought to recover "stacked [UIM] coverage under the Personal Auto Policy issued by the defendant, GEICO Casualty Company, to [the plaintiff's parents]." *Id.* at 232. The insurer argued that the plaintiff's declaratory relief claim was entirely duplicative of his breach of contract claim. *Id.* at 231. The court agreed, noting that the claims were "nearly identical" and holding that to the extent the plaintiff sought a declaration that he was entitled to recover under his parents' policy, the claim for declaratory judgment was duplicative of the breach of contract claim. *Id.* at 231–34. The court also reasoned that the plaintiff would not be prejudiced by dismissal of his declaratory judgment claim since he could still attain full relief on the breach of contract claim. *Id.* at 234.

Courts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims. *See, e.g.*, *id.* at 233 (collecting cases); *see also In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 639–40 (E.D. Pa. 2017) (granting motion to dismiss and holding that the declaratory judgment claim was duplicative of the breach of contract claim, where the plaintiffs requested declaratory relief resolving the parties' obligations under the applicable insurance policies); *Nova Fin. Holdings Inc. v. Bancinsure, Inc.*, Civil Action No. 11-07840, 2012 WL 1322932, at *4 (E.D. Pa. Apr. 17, 2012) (granting motion to dismiss, holding that the declaratory judgment claim was duplicative of the breach of contract claim where the plaintiffs requested a declaratory judgment "as to the obligations rendered by the insurance agreement on [the insurer]," and reasoning that the plaintiffs would not be prejudiced because they could still attain full relief on their breach of contract claim); *Smithkline Beecham Corp. v. Continental Ins. Co.*,

No. Civ.A. 04-2252, 2004 WL 1773713, at *1–2 (E.D. Pa. Aug. 4, 2004) (granting motion to dismiss and holding that the breach of declaratory judgment claims were duplicative of the breach of contract claims and the plaintiff could be afforded full relief on its breach of contract claims).

Here, in each of the first three counts of their Complaint, the LeBruns seek declaratory relief, and in Count IV, they assert a breach of contract claim. In Count I, the LeBruns allege that they are "entitled to a declaration that their claims for recovery of [UIM] benefits under the Personal Auto Policy issued by [LM General] are not barred by the household exclusion and they may maintain a claim for such benefits from [LM General.]" (Doc. No. 5 at ¶ 125; *see also id.* at pp. 38-39.)[9] In Count II, the LeBruns assert that they are "entitled to a declaration that the household exclusion does not bar their claim for recovery of [UIM] benefits under the policy issued by [LM General]." (*Id.* at ¶ 145; *see also id.* at p. 43.)[10] In Count III, the LeBruns allege that they are "entitled to a declaration that the Personal Auto Policy issued by [LM General] provides stacked [UIM] coverage." (*Id.* at ¶ 171; *see also id.* at pp. 46–47.)[11] Finally, in Count IV, the LeBruns bring their breach of contract claim and assert that they are "entitled to recover stacked [UIM] benefits under the Personal Auto Policy issued by [LM General]." (*Id.* at ¶

---

[9] A similar class allegation follows: "Each member of the class is entitled to a declaration that his or her claim for recovery of [UM] and/or [UIM] benefits is not barred by the household exclusion and that he and/or she may assert a claim for [UM] and/or [UIM] benefits under the pertinent policy of insurance issued by [LM General]." (Doc. No. 5 at ¶ 126; *see also id.* at p. 39.)

[10] A similar class allegation follows: "Each member of the class is entitled to a declaration that his or her claim for recovery of [UM] and/or [UIM] benefits under the pertinent policy issued by [LM General] is not barred by the household exclusion." (*Id.* at ¶ 150.)

[11] A similar class allegation follows: "Each member of the class is entitled to a declaration that the Policy under which claim has been made provides stacked [UM] and/or [UIM] motorist coverage." (*Id.* at ¶ 172; *see also id.* at pp. 46–47.)

201.)[12]

A review of the LeBruns' counterclaims illustrates that their claims for declaratory relief and breach of contract are nearly identical. *Compare* Doc. No. 5 at ¶ 201 (breach of contract claim) *with id.* at ¶ 171 (Count III of declaratory relief). And even though the language of Counts I and II focus on the household exclusion, rather than on stacked benefits, we find that adjudication of the breach of contract claim would still resolve the same issue. The question raised in the breach of contract claim—whether the LeBruns "may recover stacked [UIM] coverage under the Personal Auto Policy issued by [LM General]"—will necessarily decide the questions raised in the declaratory judgment claims. *See Butta II*, 400 F. Supp. 3d at 234. Indeed, to determine that the LeBruns are entitled to recover on their breach of contract claim, a necessary prerequisite would be finding that the household exclusion did not bar their claim. Further, the LeBruns can still attain full relief on the breach of contact claim. Thus, we conclude that the LeBruns would not be prejudiced by dismissal of their declaratory judgment claims, which are duplicative of their breach of contract claim.[13]

---

[12] A similar class allegation follows: "Each member of the class is entitled to recover stacked [UM] and/or [UIM] motorist benefits from [LM General] under the applicable policy of insurance in question." (*Id.* at ¶ 202.)

[13] The LeBruns cite to *Rarick v. Federal Mutual Insurance Co.*, 852 F.3d 223 (3d Cir. 2017), for the proposition that "declaratory and compensatory claims seeking recovery of underinsured motorist benefits are independent and separate." (Doc. No. 15-1 at p. 50.) The LeBruns are mistaken—*Rarick* did not hold, *as a general matter*, that "declaratory and compensatory claims seeking recovery of underinsured motorist benefits are independent and separate." In *Rarick*, the Third Circuit addressed whether a district court can decline jurisdiction on a motion to remand to state court. 852 F.3d at 229. When it applied the independent claims test to determine whether federal jurisdiction over the claims was warranted, it found that, under the specific facts pled, the plaintiffs' legal claims were independent of their declaratory claims. *Id.* at 229–30. In its analysis, the Third Circuit explained that legal claims are "independent" of a declaratory claim "when they are alone sufficient to invoke the court's subject matter jurisdiction." *Id.* at 228 (internal quotation marks and citations omitted). *Rarick* is simply inapplicable in a case such as this one. *See Butta II*, 400 F. Supp. 3d at 232 ("Our Court of Appeals [in *Rarick*] did not hold 'declaratory and compensatory claims seeking recovery of underinsured motorist benefits are independent and separate,' as Mr. Butta posits in his briefs, but instead held the specific facts applied under the independent claim test warranted federal jurisdiction over the claims. This standard is inapplicable to Mr.

In their attempts to distinguish between the two types of claims, the LeBruns argue that they seek a declaration that they are "*eligible to seek* recovery of [UIM] benefits" and that the claim for declaratory judgment is just a threshold determination. (Doc. No. 15 at p. 50 (emphasis added).) The *Butta II* court rejected that very same argument. *See Butta II*, 400 F. Supp. 3d at 235 ("Mr. Butta frames his requested declaratory judgment as necessary to confirm he '*is eligible to seek benefits*,' because only then may he 'proceed to seek to adjudicate the compensatory claim for breach of contract.' In other words, Mr. Butta asks us to declare he is eligible to do something he is doing in this very case, and something he will do at trial in a matter of months: present evidence on his breach of contract claim."). The same logic holds true here. Like the plaintiffs in *Butta II*, the LeBruns are asking us to declare they are eligible to seek recovery of UIM benefits, when they are in fact already seeking recovery of their UIM benefits through their breach of contract claim.

LM General also contends that the declaratory judgment claims should be dismissed because the LeBruns seek declarations that LM General is liable to the LeBruns based on past conduct. (Doc. No. 12-2 at p. 24.) The Third Circuit has explained that "[d]eclaratory judgments are meant to define the legal rights and obligations of the parties in anticipation of some *future* conduct. *Declaratory judgments are not meant simply to proclaim that one party is liable to another*." *Andela v. Administrative Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014) (emphasis added).

Again, the *Butta II* decision is instructive. As noted above, the plaintiff sought a declaration that the plaintiff was "entitled to receive stacked [UIM] coverage under the Personal

---

Butta's case, where claims for declaratory judgment and breach of contract arise under one cause of action in federal court.").

Auto Policy issued by GEICO to [the plaintiff's parents]," where the insurance company had already denied his claim for UIM benefits, relying on the household exclusion. *Butta II*, 400 F. Supp. 3d at 229, 231–32. The court held that to the extent the plaintiff asked the court to declare he was entitled to recover under his parents' policy, his claim "improperly requests adjudication of liability issues to be resolved at trial." *Id.* at 234–35.

Like the insurer in *Butta II*, LM General denied the LeBruns' claim for UIM benefits, relying on the household exclusion. As a result, and as discussed above, the LeBruns seek declarations that "their claims for recovery of [UIM] benefits under the Personal Auto Policy issued by [LM General] are not barred by the household exclusion and they may maintain a claim for such benefits from [LM General]"; "the household exclusion does not bar their claim for recovery of [UIM] benefits under the policy issued by [LM General]"; and "the Personal Auto Policy issued by [LM General] provides stacked [UIM] coverage." (Doc. No. 5 at ¶¶ 125, 145, 171.) The LeBruns are impermissibly trying to adjudicate past conduct (*i.e.*, LM General's denial of their claim for UIM benefits) and resolve liability issues (*i.e.*, their ability to recover UIM benefits under the policy) through such declarations. Therefore, we find dismissal appropriate here.

### H. Statute of limitations as to putative class members' claims

LM General contends that class members whose claims were denied prior to June 17, 2015 (more than four years before the LeBruns filed their counterclaims) are barred by the statute of limitations. (Doc. No. 12-2 at pp. 24–25.) Although both parties agree that under Pennsylvania law the applicable statute of limitations for breach of contract actions is four years (*see* Doc. No. 12-2 at pp. 24–25; Doc. No. 15-1 at p. 51; *see also* 42 Pa. C.S.A. § 5525), the LeBruns counter that there is a question as to when the statute begins to run. (Doc. No. 15-1 at p. 51.)

"While a statute of limitations defense is an affirmative defense that a defendant must usually plead in his answer, a court may grant a motion under Rule 12(b)(6) raising a limitations defense if the face of the complaint demonstrates that the plaintiff's claims are untimely." *Stockdale I*, 390 F. Supp. 3d at 613 (internal quotation marks and citations omitted).

As even the LeBruns acknowledge (*see* Doc. No. 15-1 at p. 51 n.24), at least one other court in this Circuit addressed similar arguments and held that the statute of limitations began when the breach of the contractual duty—*i.e.*, when denial of coverage based on the household exclusion—occurred, and dismissed class members' claims as untimely where the denial of coverage occurred more than four years prior to the commencement of the lawsuit. *See Stockdale I*, 390 F. Supp. 3d at 613.

In *Stockdale I*, the plaintiff sought to "represent a class of persons injured in motor vehicle accidents from 1990 to the present," who were denied coverage "by reason of the household exclusion." *Id.* The defendant argued that claims asserted on behalf of the putative class predating 2015 (four years prior to the lawsuit being filed) should be dismissed as time-barred. The court held:

> The face of the Complaint demonstrates . . . that the statute of limitations bars claims in which an insurer denied coverage or refused to arbitrate because of the household exclusion prior to January 23, 2015—four years before Plaintiff filed this putative class action. Accordingly, putative class members' claims based upon a breach of an alleged insurance contract 'by reason of the household exclusion' prior to January 23, 2015 are time-barred, and will be dismissed."

*Id.* (citations omitted); *accord O'Brien v. GEICO Employees Ins. Co.*, Civil Action No. 19-01920, 2019 WL 2866092, at *2 (E.D. Pa. July 3, 2019) (in a non-class action lawsuit, holding that the plaintiff's claim was barred by the statute of limitations and noting that "[f]or purposes of [UM] or [UIM] claims, 'the running of the statute of limitations is commenced upon an alleged breach, which . . . would be occasioned by the insurer's denial of coverage or refusal to

arbitrate'" (citations omitted)).

We find the *Stockdale I* court's reasoning persuasive and applicable here, where the LeBruns seek to represent a nearly identical class as the *Stockdale I* plaintiff. *See* Doc. No. 5 at ¶ 80 (seeking to "represent a class of persons who are insureds under policies issued by the defendant on the Counterclaim, LM General, who are injured in motor vehicle accidents from 1990 to present" who were denied UM or UIM benefits "by reason of the household exclusion"). Because a four-year statute of limitations applies, we hold that the face of the LeBruns' complaint illustrates that the statute of limitations bars claims in which LM General denied coverage because of the household exclusion prior to June 17, 2015. Therefore, putative class members' claims based upon a breach of an alleged insurance contract "by reason of the household exclusion" prior to June 17, 2015 are time-barred and will be dismissed.[14]

## I.    Standing as to putative class members' UM claims

LM General asserts that the claims of putative class members who pursued UM claims should be dismissed because the LeBruns did not assert UM claims and therefore do not have standing. (Doc. No. 12-2 at p. 25.) The LeBruns did not address this argument in their response. (*See generally* Doc. No. 15-1.) Neither LM General nor the LeBruns point to a case dealing with

---

[14] In their attempts to avoid dismissal of untimely class member claims, the LeBruns state that the date of the breach of the contractual duty is dispositive, not the date of the accident. (Doc. No. 15-1 at p. 51.) But nowhere does LM General argue that the date of the accident is dispositive. (*See* Doc. No. 12-2 at pp. 24–25, Doc. No. 20 at p. 10.)

Plaintiffs also cite to *Erie v. Bristol*, 174 A.2d 578 (Pa. 2017). (*See* Doc. No. 15-1 at p. 51.) In *Erie*, the Pennsylvania Supreme Court determined "when the statute of limitations begins to run on an insured's ability to initiate a court action to enforce a UM claim in a policy containing an arbitration agreement." 174 A.2d at 579–80. The court held that "*the running of the statute is commenced upon an alleged breach of a contractual duty, which in this case would be occasioned by the insurer's denial of coverage or refusal to arbitrate.*" *Id.* at 580 (emphasis added). *Erie* does not contradict our holding today. In fact, the *Stockdale I* court relied on *Erie* in its determination that class members' claims were untimely if the breach of the contractual duty (*i.e.*, when coverage was denied) occurred more than four years prior to the commencement of the suit. *See Stockdale I*, 390 F. Supp. 3d at 613.

precisely this issue (*i.e.*, UM coverage versus UIM coverage).

As a general matter, "Article III governs constitutional standing and limits our jurisdiction to actual 'cases or controversies.'  Article III requires a plaintiff to demonstrate "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Neale v. Volvo Cars of N. Am.*, *LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015) (citations omitted).  "Standing requires that the party seeking to invoke federal jurisdiction demonstrate standing for each claim he seeks to press."  *Id.* at 359 (internal quotation marks and citations omitted); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." (internal quotation marks and citations omitted)).  "In the context of a class action, Article III must be satisfied by at least one named plaintiff."  *Neale*, 794 F.3d at 359 (internal quotation marks and citations omitted).  "[C]lass representatives must meet Article III standing requirements the moment a complaint is filed."  *Ponzio v. Mercedes-Benz USA, LLC*, Civil Action No. 18-12544, 2020 WL 1183733, at *13 (D.N.J. Mar. 11, 2020) (internal quotation marks and citations omitted); *accord Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." (internal quotation marks and citations omitted)).

Here, neither Sharon nor Ed LeBrun allege that they sought, or were denied, UM benefits.  As a result, we find that Article III is not satisfied as to the UM claims.

In the alternative, we find that the LeBruns have waived this issue by not responding to it and that dismissal is warranted. *See, e.g.*, *Dreibelis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where the plaintiff "had ample opportunity to make [that] argument in response to defendants' motion to dismiss and failed to do so"); *Daugherty v. Adams*, Civil Action No. 17-368, 2019 WL 7987859, at *13 (W.D. Pa. Nov. 15, 2019), *report and recommendation adopted*, 2020 WL 467828 (W.D. Pa. Jan 29, 2020) ("With respect to waiver, waiver occurs if plaintiff has an opportunity to make an argument in response to defendant's motion to dismiss and fails to do so." (citations omitted)). *Shoffner v. Wenerowicz*, Civil Action No. 15-00392, 2015 WL 4199075, at *5 (E.D. Pa. July 13, 2015) (dismissing plaintiffs' Fourth Amendment claim where the defendants moved to dismiss that claim and the plaintiffs never addressed the argument in their opposition brief).

## IV.     Conclusion

Because the declaratory judgment claims are duplicative of the breach of contract claim, we dismiss Counts I, II, and III with prejudice. We also grant LM General's motion to dismiss with respect to putative class members' claims that are based upon a breach of an alleged insurance contract "by reason of the household exclusion" prior to June 17, 2015, and we dismiss putative class members' UM claims with prejudice. We deny LM General's motion to dismiss as to the remainder of its arguments.

An appropriate order follows.