IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LM GENERAL INSURANCE CO.**, <br><br> Plaintiff-Counterclaim Defendant, <br><br> *v.* <br><br> **SHARON LEBRUN and ED LEBRUN,** <br><br> Defendants-Counterclaim Plaintiffs. | **CIVIL ACTION** <br><br> **NO. 19-2144-KSM** |

**MEMORANDUM**

**Marston, J.**                                                                                      **December 30, 2020**

Presently before the Court is Plaintiff-Counterclaim Defendant LM General Insurance Company's Motion to Certify this Court's July 1, 2020 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b). (Doc. No. 44.) For the reasons discussed below, we grant in part the motion.

**I.       *Factual Background and Procedural History***

This insurance coverage dispute arises from an August 2016 motor vehicle accident in which Defendant-Counterclaim Plaintiff Ed LeBrun was struck by a motorist and severely injured while riding his motorcycle. (Doc. No. 5 at ¶¶ 13–16.) At the time of the accident, Sharon and Ed LeBrun had two insurance policies—a motorcycle policy issued by State Farm Mutual Automobile Insurance Company, and a personal auto policy issued by LM General that covered three vehicles at its inception but did not cover the motorcycle. (*Id.* at ¶¶ 20–23, 29, 51, 53.)

After the accident, the LeBruns sought to recover stacked[1] underinsured motorist

---

[1] "'Stacking' refers to the practice of combining the insurance coverage of individual vehicles to increase

("UIM") benefits under the LM General policy, but LM General denied the claim.  (*Id.* at ¶¶ 31–34, 36; *see also* Doc. Nos. 5-2, 5-4.)  First, LM General concluded that the household exclusion[2] barred the LeBruns from recovering benefits under the policy, since Mr. LeBrun was injured while riding a motorcycle that he owned but that was not insured under the LM policy.  (*See* Doc. Nos. 5-2, 5-4.)  Second, LM General determined that the LeBruns were not entitled to stacked UIM coverage because Mrs. LeBrun signed a Rejection of Stacked Underinsured Coverage Limits form[3] and Mr. and Mrs. LeBrun each signed a form stating that they were aware that their "selections appl[ied] throughout the policy period regardless of any change such as the replacement or addition of vehicles or drivers" and "applie[d] to all future renewals or reinstatements of [the] policy."  (Doc. No. 5-2 at pp. 4–5, 7, 9; Doc. No. 5 at ¶ 45; Doc. No. 2-2.)  However, LM General did not require the LeBruns to sign a new stacking waiver form when the LeBruns added a fourth vehicle, a 2015 GMC Sierra, to their policy; rather, LM General issued

---

the amount of total coverage available to an insured."  *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019).

[2] The household exclusion states:

> We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:  (1) By an "insured," as defined in this endorsement, while using, "occupying," or when struck by, any motor vehicle owned by you or a "family member," which is not insured for Uninsured Motorist Coverage under this policy.

(Doc. No. 2-1 at p. 18 ("Uninsured Motorists Coverage – Pennsylvania (Non-Stacked)"); *see also* Doc. No. 5 at ¶ 70; *accord* Doc. No. 2-1 at p. 11 (Part C – Uninsured Motorists Coverage, Exclusions, Part A).)

[3] The statutorily mandated waiver form states:

> By signing this waiver, I am rejecting stacked limits of Underinsured Motorists Coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy, I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject this coverage.

(*See* Doc. No. 5 at ¶ 45; Doc. No. 5-2 at p. 9; Doc. No. 2-2.)

an Amended Declarations Page.  (Doc. No. 5 at ¶¶ 51, 53–55, 141.)

As a result of an ongoing dispute over its coverage determinations, LM General initiated the instant action on May 17, 2019, seeking a declaratory judgment that the household exclusion precludes coverage for the LeBruns' claim arising from the 2016 accident and that the stacking waiver form remained valid and in effect at the time of the accident.  (Doc. No. 1 at p. 13.)

On July 7, 2019, Sharon and Ed LeBrun, on behalf of themselves and a class of similarly situated persons, asserted counterclaims for breach of contract and declaratory judgment against LM General, based on LM General's denial of their claims for UIM benefits.  (Doc. No. 5.)  The LeBruns sought to recover compensatory relief—the stacked UIM benefits allegedly due to them under their insurance policy.  (*Id.* at ¶¶ 6, 180–202.)  The LeBruns also sought declaratory relief—specifically, declaratory judgments that their claims for recovery of UIM benefits are not barred by the household exclusion provision and that they are entitled to stacked UIM coverage.  (*Id.* at ¶ 5.)

On September 6, 2019, LM General moved to dismiss the LeBruns' counterclaims.  (Doc. Nos. 12-2, 20.)  On July 1, 2020, we granted in part and denied in part LM General's motion.  (Doc. Nos. 35–36.)  We concluded that the LeBruns' declaratory judgment claims were duplicative of the breach of contract claim and therefore dismissed the declaratory counts.  (*Id.*)  We also granted LM General's motion to dismiss with respect to putative class members' claims that were barred by the statute of limitations, and dismissed putative class members' uninsured motorist ("UM") claims.  (*Id.*)

However, we denied the remainder of LM General's motion.  (*Id.*)  First, we rejected LM General's contention that, at the motion to dismiss stage, the LeBruns are precluded from recovering stacked UIM benefits as a matter of law because Mrs. LeBrun signed a waiver form.

(Doc. No. 35 at pp. 6–11.) After reviewing the relevant statutes and case law (Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), the *Sackett* trilogy[4] and its progeny (*see id.* at pp. 6–9)), we concluded that the manner in which the LeBruns' fourth vehicle, the 2015 GMC Sierra, was added to their existing policy is crucial to the determination of the need for a new stacking waiver, and explained that the first step in the analysis, as set forth by the Pennsylvania Superior Court in *Bumbarger v. Peerless Indemnity Insurance Co.*, 93 A.3d 872, 873–74, 878–79 (Pa. Super. Ct. 2014) (*en banc*), requires a factual determination. (*Id.* at p. 11.) Accordingly, we deferred ruling on this issue until summary judgment. (*Id.*)

Next, we concluded that it was premature to determine whether the LeBruns "knowingly waived" inter-policy stacking[5] by signing the statutorily mandated waiver form. (*Id.* at pp. 11–15.) We explained that there was a dearth of case law on this subject, and that the Pennsylvania Supreme Court conducted a fact-specific inquiry as to whether the insured's waiver was knowing in the seminal stacking decision, *Craley v. State Farm Fire & Casualty Co.*, 895 A.2d 530, 533 (Pa. 2006). (*Id.* at p. 15.) As such, we declined to decide the issue on a motion to dismiss, before the opportunity for fact discovery. (*Id.*)

---

[4] In the *Sackett* trilogy, the Pennsylvania Supreme Court and Pennsylvania Superior Court delineated when insurers must provide stacking waivers to insureds. *See Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194, 196, 202 (Pa. 2007) ("*Sackett I*") (holding that each time an insured adds a new vehicle to an existing policy, the insurer must secure a new stacking waiver, even if the insured had previously signed a stacking waiver form); *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 331, 334 (Pa. 2007) ("*Sackett II*") (providing clarification on a motion for reconsideration, and holding that when a vehicle is added via a continuous after-acquired clause, the insurer is not obligated to get a new waiver, but when a vehicle is added to an existing policy under a finite after-acquired clause, *Sackett I* controls and the insurer must obtain a new waiver); *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637 (Pa. Super. Ct. 2010) ("*Sackett III*") (concluding that the plaintiffs' additional vehicle was added via an endorsement, rendering the after-acquired clause inapplicable, and that the insurer was required to obtain a new waiver).

[5] *Inter*-policy stacking refers to "the stacking of limits available on two or more separate policies," such as the LM General personal auto policy and the State Farm motorcycle policy in this case. *Craley v. State Farm Fire & Casualty Co.*, 895 A.2d 530, 533 (Pa. 2006). *Intra*-policy stacking "entail[s] the stacking of limits applicable to more than one vehicle insured under a single policy." *Id.*

Third, we declined to find, at this early stage in the litigation, that the household exclusion bars the LeBruns from recovering UIM benefits as a matter of law. (*Id.* at pp. 15–19.) We explained that, for *Gallagher v. GEICO Indemnity Co.*[6] to apply, this Court would first need to find that the LeBruns did not waive inter-policy stacking. (*Id.* at pp. 15–16.) We also noted that courts have been inclined to interpret *Gallagher* broadly. (*Id.* at pp. 17–18.) As such, we concluded that to the extent the LeBruns did not waive inter-policy stacking, the case law indicates that *Gallagher* may apply, and at the motion to dismiss stage, we were not inclined to interpret *Gallagher*'s holding narrowly. (*Id.* at p. 19.)

On July 22, 2020, LM General filed a Motion to Certify the Court's July 1, 2020 Memorandum and Order Regarding LM General's Motion to Dismiss for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Discovery and Other Pretrial Proceedings. (Doc. No. 44.) In challenging our partial denial of its Motion to Dismiss, LM General argues that two questions should be certified to the Third Circuit:

> (1) whether an UIM coverage stacking waiver signed by an insured remains enforceable when the insured later adds a newly acquired vehicle to the policy that contains a "continuous" newly acquired vehicle provision, notwithstanding that the insurer issued updated declarations; and
>
> (2) whether a household vehicle exclusion is enforceable as a matter of law when the named insured signed the statutorily mandated stacking waiver form because that form waives both inter- and intra-policy stacking.

(Doc. No. 44 at p. 1.)

In response, the LeBruns argue that it is premature to resolve the stacking and household

---

[6] In *Gallagher*, the plaintiff had two GEICO insurance policies—one for his motorcycle (the motorcycle policy), and one for his cars (the automobile policy). 201 A.3d at 132–33. The plaintiff opted for and paid for stacked UM and UIM coverage when purchasing both policies. The Pennsylvania Supreme Court held that that the household exclusion, which was "buried in an amendment" to the automobile policy, violated the MVFRL because it impermissibly acted as a *de facto* waiver of stacked UM and UIM coverages.

5

exclusion issues at this point, particularly as issues relating to the household exclusion may be affected or resolved by the Pennsylvania Supreme Court's decision in another matter, and that an immediate appeal would not advance the litigation. (Doc. No. 46.) LM General filed a reply. (Doc. 48.)

## II.     Legal Standard

In general, litigants may not appeal a matter to the Court of Appeals until the district court has rendered a final judgment. *See, e.g.*, *United States v. Exide Corp.*, No. CIV.A. 00-3057, 2002 WL 992817, at *2 (E.D. Pa. May 15, 2002). "Denials of motions to dismiss are not final orders, and a losing party may not ordinarily pursue an immediate appeal from them." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 704 (M.D. Pa. Apr. 8, 2009).

However, 28 U.S.C. § 1292(b) creates an exception to the final judgment rule, pursuant to which a district court may certify an interlocutory order for immediate appeal in "exceptional circumstances." *See*, *e.g.*, *Exide Corp.*, 2002 WL 992817, at *2; *Bradburn Parent Teacher Store, Inc., v. 3M*, No. Civ.A. 02-7676, 2005 WL 1819969, at *2 (E.D. Pa. Aug. 2, 2005); *accord Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. Civ.A. 05-0398, 2006 WL 401843, at *5 (E.D. Pa. Feb. 16, 2006) ("Certification should only be granted in the rare case where an immediate appeal would avoid expensive and protracted litigation 'and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.'" (quoting *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958))).

Under § 1292(b), a district court may certify an order for interlocutory appeal if (1) the order involves a controlling question of law, as to which (2) there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see also Exide Corp.*, 2002 WL

992817, at *2 (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)); *Hess v. A.I. DuPont Hosp. for Children*, Civil Action No. 08-0229, 2009 WL 2776606, at *2 (E.D. Pa. Aug. 28, 2009).

"Even if all of the elements are satisfied, the decision to certify an interlocutory order for appeal under section 1292(b) 'rests within the sound discretion of the trial court.'" *Hall v. Wyeth, Inc.*, Civil Action No. 10-738, 2010 WL 4925258, at *1 (E.D. Pa. Dec. 2, 2010) (citation omitted); *Bradburn Parent Teacher Store, Inc.*, 2005 WL 1819969, at *2; *see also In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 704 ("[T]he court may decline to certify an order even if the parties have satisfied all elements enumerated in the statute."). In exercising its discretion, "a district court should be mindful of the strong policy against piecemeal appeals." *Bradburn Parent Teacher Store, Inc.*, 2005 WL 1819969, at *2; *Sayles v. Allstate Ins. Co.*, Civil Action 3:16-CV-01534, 2017 WL 2985402, at *1 (M.D. Pa. July 13, 2017).

### III. Discussion

In its motion, LM General asks us to certify two questions to the Third Circuit:

(1) whether an UIM coverage stacking waiver signed by an insured remains enforceable when the insured later adds a newly acquired vehicle to the policy that contains a "continuous" newly acquired vehicle provision, notwithstanding that the insurer issued updated declarations; and

(2) whether a household vehicle exclusion is enforceable as a matter of law when the named insured signed the statutorily mandated stacking waiver form because that form waives both inter- and intra-policy stacking.

(Doc. No. 44 at p. 1.) Below, we will evaluate these questions to determine whether they satisfy the interlocutory appeal standard set forth in § 1292(b).

### A. Controlling Question of Law

We first must consider whether our July 1 order involves controlling questions of law. 28

U.S.C. § 1292(b).  A question of law is controlling if:  (1) an incorrect disposition would constitute reversible error; or (2) it is serious to the conduct of the litigation, either practically or legally.  *Sayles*, 2017 WL 2985402, at *2; *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 705.  "[O]n the practical level, saving of time of the district court and of expense to the litigants [is] deemed . . . to be a highly relevant factor."  *Bradburn Parent Teacher Store, Inc.*, 2005 WL 1819969, at *3; *Hall*, 2020 WL 4925258, at *1.

First, we consider whether the stacking and waiver issues discussed at length in our July 1 opinion (*see* Doc. No. 35 at pp. 6–11) present a controlling question of law.  In our prior opinion, we considered whether the LeBruns' fourth vehicle was added via an endorsement or continuous or finite after-acquired vehicle clause to determine whether LM General was required to obtain a new stacking waiver.  (*See id.*)  After our discussion of the *Sackett* trilogy, we turned to its progeny and observed that "a divide amongst the case law appears to have emerged," such that courts—when faced with similar sets of facts—"vary in their determinations of whether vehicles are added to policies via an endorsement, a continuous after-acquired vehicle clause, or a finite after-acquired vehicle clause and thus whether insurers are required to obtain new stacking waivers."  (*Id.* at p. 8.)  In particular, we observed that in the *Bumbarger* line of cases, the Pennsylvania Superior Court found that the vehicles were added by endorsement and the insurers were required to obtain new forms,[7] but in the *Seiple* line of cases, federal courts in the

---

[7] *See Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872, 873–74, 878–79 (Pa. Super. Ct. 2014) (*en banc*) (holding that a fourth vehicle was added via endorsement and the insurer needed to obtain a new waiver, where the plaintiff informed her insurance agent that she wanted the vehicle added to the policy and the addition was reflected in an amended declarations page); *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481, 490 (Pa. Super. Ct. 2017) (concluding that the additional vehicle was added via an endorsement and the insurer had to secure a new waiver, where the plaintiffs requested proof of coverage for a vehicle prior to purchase and the agent faxed the plaintiffs an amended declarations page reflecting coverage of that vehicle); *Newhook v. Erie Ins. Exch.*, No. 1917 EDA 2017, 2018 WL 1939814, at *4 (Pa. Super. Ct. Apr. 25, 2018) (holding that the insurer should have secured a new waiver, where the insurance company issued an amended declarations page, reflecting the addition of two new vehicles); *Kline v. Travelers*

Third Circuit found that the vehicles were added by continuous after-acquired clauses and that insurers were not required to obtain new waiver forms.[8]

On one hand, we must reckon with whether this is an abstract legal issue or "pure" question of law appropriate for interlocutory appeals. *See Liberty Salad, Inc. v. Groundhog Enters.*, Civil Action No. 17-226, 2019 WL 1303829, at *4 (E.D. Pa. Mar. 20, 2019) (explaining that where the court applied the law to the facts to conclude that there was no binding express contract, the decision did not "present the 'pure' question of law that interlocutory appeals were designed to address). This is so given that the first step of the two-part analysis set forth in *Bumbarger* requires a factual determination as to how the vehicle was added to the existing policy. (*See* Doc. No. 35 at p. 11 (citing *Bumbarger*, 93 A.3d at 876–77).) On the other hand, *Bumbarger*, a Pennsylvania Superior Court decision, is not binding on us, and stands in stark contrast to *Seiple*, where the Third Circuit affirmed the district court's holding, on a motion to dismiss, that the vehicle was added via a continuous after-acquired vehicle clause, the insurer

---

*Pers. Sec. Ins. Co.*, 223 A.3d 677, 688 (Pa. Super. Ct. 2019) (affirming the trial court's finding that two new vehicles were added to the policy via endorsements and that the insurer was required to obtain a new waiver).

[8] *See Seiple v. Progressive N. Ins. Co.*, 954 F. Supp. 2d 352, 353, 360 (E.D. Pa. 2013), *aff'd*, 568 F. App'x 183 (3d Cir. 2014) (holding that the plaintiffs' three motorcycles were added via a continuous after-acquired vehicle provision and the insurer did not need to obtain a new waiver, where, each time the plaintiff purchased a new motorcycle, the insurer issued a revised declarations page, listing the motorcycles covered under the policy); *Powell v. Allstate Prop. & Cas. Ins. Co.*, Civil Action No. 13-5721, 2014 WL 3573139, at *8–9 (E.D. Pa. July 21, 2014) (concluding that the plaintiff's vehicle was added to the policy via a continuous after-acquired clause and rejecting the plaintiff's argument that the amended declarations page, which reflected the addition of the vehicle, was an endorsement); *Mitchell v. Progressive Preferred Ins. Co.*, Civil Action No. 3:14-0384, 2015 WL 5762927, at *3 (M.D. Pa. Sept. 29, 2015) (holding that the vehicle was added to the policy via a continuous after-acquired vehicle clause and no new waiver form was required); *Kuhns v. Travelers Home & Marine Ins. Co.*, 760 F. App'x 129, 132–33 (3d Cir. 2019) (affirming the magistrate court's conclusion that "neither the adding of the fourth vehicle to the declarations sheet, nor the issuance of that sheet, triggered [the insurer's] contractual duty to extend coverage to the [insured's] newly-acquired vehicle. Instead, its duty was triggered by the policy's after-acquired vehicle clause," and holding that the insurer was not required to secure a new waiver form).

was not required to obtain a new waiver, and the plaintiff failed to state a claim as a matter of law.

At bottom, we conclude that this involves a controlling question of law because "it is serious to the conduct of the litigation, either practically or legally." Indeed, whether the LeBruns are entitled to relief depends at least in part on how the vehicle was added and whether LM General was required to obtain a new stacking waiver. If LM General was required to obtain a new waiver, then the issue of whether the LeBruns waived inter-policy stacking when Mrs. LeBrun signed the old form is rendered moot. The only question remaining would be whether the household exclusion is valid and precludes the LeBruns from receiving UIM benefits.

Second, we find that the household exclusion and waiver issues present controlling questions of law. Although LM General frames this as a singular question (*see* Doc. No. 44 at p. 1 (question 2)), it actually implicates two questions, which we addressed separately in our prior opinion[9]: first, whether the statutorily mandated waiver form suffices to waive both *inter-* and *intra-*policy stacking, and second, whether the household vehicle exclusion is enforceable as a matter of law where the insured signed the waiver form. (*See* Doc. No. 35 at pp. 11–15 (discussing waiver of inter-policy versus intra-policy stacking); *id.* at pp. 15–19 (discussing the enforceability of the household exclusion).) As to the first point, while we have observed that the *Craley* court engaged in a fact-specific inquiry as to whether the insured knowingly waived inter-policy stacking and that *Craley* and *Donovan* both were decided on summary judgment, we find that the question of whether signing the statutory waiver form is sufficient to waive inter-

---

[9] Indeed, the manner in which LM General frames its question makes clear that LM General assumes that the statutorily mandated waiver form waives inter-policy stacking, when the law is far from clear on that point. *See Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545, 549 (E.D. Pa. 2019) (holding that the waiver only applied to *intra-*policy stacking).

policy stacking on a multi-vehicle policy is a legal question and is serious to the conduct of this litigation. Indeed, this is one of the three critical issues in this case, and if resolved in LM General's favor (i.e., a finding that the LeBruns waived inter-policy stacking by signing the waiver form), it could end the case[10] (as long as LM General was not required to obtain a new stacking form when the fourth vehicle was added).

As to the second point, whether the household exclusion is unenforceable in *all* situations (rather than limited to the facts of *Gallagher*) is a controlling question because, if erroneously decided, it "would result in reversal on final appeal because Defendants would have been entitled to . . . dismissal for [the LeBruns'] failure to state a claim." *See Hess*, 2009 WL 2776606, at *2; *see also Hall*, 2020 WL 4925258, at *1 ("If the Third Circuit were to disagree with this Court's ruling, the judgment order denying Defendants' motion to dismiss . . . would be reversed and Plaintiff's remaining claim would be foreclosed."). To that end, if the Third Circuit were to find that the household exclusion is valid and enforceable as a matter of law, then the LeBruns would be precluded from asserting their remaining breach of contract claim because the household exclusion would bar them from recovering the UIM benefits they seek.

### B. Substantial Grounds for Difference of Opinion

Next, we must determine whether substantial grounds for difference of opinion exist. 28 U.S.C. § 1292(b). A substantial ground for difference of opinion exists when the matter involves "one or more difficult and pivotal questions of law not settled by controlling authority." *Liberty Salad*, 2019 WL 1303829, at *4 (quotation marks and citation omitted); *Hall*, 2010 WL 4925258, at *2; *see also In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 705.

---

[10] This is so because the LeBruns admit that for *Gallagher* to apply, the LeBruns must have not waived inter-policy stacking. (*See* Doc. No. 35 at p. 16 (citing Doc. No. 15-1 at pp. 47–48).)

"The clearest evidence of 'substantial grounds for difference of opinion' is where 'there are conflicting interpretations from numerous courts.'" *Sayles*, 2017 WL 2985402, at *2 (citations omitted); *see also In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 706 ("The existence of conflicting judicial opinions provides support for certification of an appeal[.]"); *Liberty Salad*, 2019 WL 1303829, at *4 ("A moving party's citation to numerous conflicting decisions on the same issue might constitute a sufficient basis for finding that substantial differences of opinion exist."). In addition, "the absence of controlling law on a particular issue can constitute substantial grounds." *Liberty Salad*, 2019 WL 1303829, at *4 (citation omitted). However, a court "should not certify questions of relatively clear law merely because the losing party disagrees with the court's analysis." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 706 (citation omitted).

First, substantial grounds for difference of opinion exist for whether the LeBruns' fourth vehicle was added via a continuous or finite after-acquired vehicle clause or an endorsement and thus whether LM General was required to obtain a new stacking waiver. As noted above (and as we observed in our prior opinion), there is a clear divide in the case law, as illustrated through the difference in Pennsylvania Superior Court decisions (*Bumbarger* line of cases) versus decisions by federal courts in this Circuit (*Seiple* line of cases). There is also a lack of clear precedent, since the Pennsylvania Supreme Court has not yet directly ruled on the precise issue before us.[11]  Given the conflicting case law and lack of clear precedent, we find that there are substantial grounds for difference of opinion.

Second, substantial grounds for difference of opinion exist on whether signing the

---

[11] In addition, the two Third Circuit cases on this issue—*Seiple v. Progressive N. Ins. Co.*, 568 F. App'x 183 (3d Cir. 2014) and *Kuhns v. Travelers Home & Marine Ins. Co.*, 760 F. App'x 129, 132–33 (3d Cir. 2019)—are both non-precedential.

statutorily mandated waiver form constitutes waiver of both inter- and intra- policy stacking. As we previously noted, there is very little guidance on this issue. (*See* Doc. No. 35 at p. 15 n.7 (discussing the dearth of guidance on this issue and how the Pennsylvania Legislature and Insurance Commissioner declined the Pennsylvania Supreme Court's invitation in *Craley v. State Farm Fire & Casualty Co.* to clarify whether an inter-policy waiver would be knowing if a policy covered more than one vehicle and the insured signed a stacking waiver form); *id.* at pp. 14–15 & n.7 (discussing the Eastern District's *Donovan v. State Farm Mutual Automobile Insurance Co.* decision, which held that signing a waiver form did *not* waive inter-policy stacking—a decision that was subsequently appealed to the Third Circuit and, in turn, the Third Circuit certified questions to the Pennsylvania Supreme Court).) Likewise, substantial grounds for difference of opinion exist as to whether the Pennsylvania Supreme Court's holding in *Gallagher v. GEICO Indemnity Co.* renders *all* household exclusions unenforceable, or whether it is limited to the facts of that case (e.g., where the insured paid for stacking, did not sign a stacking waiver form, and the same insurer issued both of the insured's policies). There is no clear precedent post-*Gallagher* as to how broadly *Gallagher* is to be construed.[12]

### C. Material Advancement of the Ultimate Termination of the Litigation

Finally, for a court to certify an order for interlocutory appeal, the appeal must materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). To determine whether

---

[12] Further, the Third Circuit has recognized that the law is far from clear on the inter-policy waiver and household exclusion issues. *See Donovan v. State Farm Mut. Auto. Ins. Co.*, No. 19-2733, Petition for Certification of Questions of State Law (3d Cir. May 26, 2020) (concluding that the *Donovan* appeal "raise[d] important and unsettled issues concerning underinsured motorist coverage under Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Const. Stat. § 1701, et. seq. (the 'Motor Vehicle Law')" and certifying questions to the Pennsylvania Supreme Court related to whether the waiver form prescribed by the Motor Vehicle Law is sufficient to waive inter-policy stacking and the enforceability of a household exclusion provision).

an appeal materially advances the ultimate termination of the litigation in this case, we must evaluate whether an appeal could eliminate the need for trial, simplify a case by foreclosing complex issues, or enable the parties to complete discovery more quickly or at less expense. *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 707; *Hall*, 2010 WL 4925258, at *2. In contrast, "where discovery is complete and the case is ready for trial an interlocutory appeal can hardly advance the ultimate termination of the litigation." *Hall*, 2010 WL 4925258, at *2; *see also In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 707 ("Cases in which discovery has closed are generally inappropriate for interlocutory appeal because they are rapidly approaching conclusion under their own momentum.").

We acknowledge that this matter is at an early stage in the litigation, and individual and class discovery have not yet begun, which weighs in favor of a finding that an interlocutory appeal could materially advance the litigation.

However, we would be remiss to ignore the fact that the Third Circuit has already certified two similar questions related to inter-policy waiver and the household exclusion to the Pennsylvania Supreme Court (*see* Doc. No. 44-2, Ex. A), and the Pennsylvania Supreme Court accepted the request for certification. Specifically, in *Donovan v. State Farm Mutual Automobile Insurance Co.*, the Third Circuit certified the following two questions, both of which would bear on the waiver and household exclusion issues raised in this case:

> (1) Is a named insured's signing of the waiver form set out at 75 Pa. Const. Stat. § 1738(d) sufficient to waive inter-policy stacking of underinsured motorist benefits under Pennsylvania's Motor Vehicle Financial Responsibility Law, where the policy insures more than one vehicle at the time the form is signed?
>
> (2) If the answer to Question 1 is no, is a household vehicle exclusion contained in a policy in which the named insured did not validly waive inter-policy stacking enforceable to bar a claim made by a resident relative[13] who is injured while

---

[13] Although the fact that the plaintiff in *Donovan* was a resident relative of the insured, unlike the LeBruns (who are the insured in our case), we find that does not suffice to distinguish the two cases and

14

occupying a vehicle owned by him and not insured under the policy under which the claim is made?

(*See* Doc. No. 44-2, Ex. A.)

Given the pendency of rulings on the questions certified in *Donovan*, we find that an interlocutory appeal of substantially similar questions would not materially advance the termination of the case.

Rulings on these inter-policy waiver and household exclusion questions, however, will not resolve the issues raised by *Sackett* and its progeny—in particular, whether an UIM coverage stacking waiver signed by an insured remains enforceable when the insured later adds a newly acquired vehicle to the policy that contains a newly acquired vehicle provision, notwithstanding that the insurer issued updated declarations. If we permitted certification of this issue, it would not unduly delay this case, as we agree with the parties that a stay of the case is warranted pending resolution of the questions certified in *Donovan*. Further, neither individual nor class discovery in this case has commenced, and a ruling on such a pivotal issue would enable the parties to complete discovery more quickly or at less expense.

## IV.   *Conclusion*

For the foregoing reasons, although we are wary of permitting piecemeal litigation, we find that the *Sackett* issues involve a controlling question of law about which there is a substantial difference of opinion, the appeal of which will materially advance this litigation. Therefore, we grant in part LM General's motion.

An appropriate order follows.

---

the thrust of the question is still substantially similar: Is a household exclusion in which a named insured did not validly waive inter-policy stacking enforceable to bar a claim made by the insured who is injured while occupying a vehicle owned by him and not insured under the policy under which the claim is made?